Filed: 2/14/2022 4:23 PM
Lynne Finley
District Clerk
Collin County, Texas
By Shelby Rawa Deputy
Envelope ID: 61733282

## CAUSE NO. 471-00692-2022

| | | |
|---|---|---|
| **CIC COATINGS, LLC,** | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | COLLIN COUNTY, TEXAS |
| | § | |
| **THE IDAHO PAINTER, INC.,** | § | |
| | § | |
| *Defendant*. | § | 471st JUDICIAL DISTRICT |

### PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE COURT:

COMES NOW, Plaintiff CIC Coatings, LLC, ("CIC") files this, their Original Petition, seeking damages and equitable relief against Defendant The Idaho Painter, Inc, ("TIP" or "Defendant"), and would show the Court as follows:

### I.    DISCOVERY CONTROL PLAN

1.     Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, discovery is intended to be conducted under Discovery Control Plan Level 3.

2.     This action is not subject to Texas Rule of Civil Procedure 169 concerning expedited actions because non-monetary relief is being sought in the form of an injunction prohibiting Defendant from further use of any existing or new content showcasing the Plaintiff's products on Defendant's social media in the future.

### II.    PARTIES

3.     CIC is a limited liability company with their principal place of business in Collin County, Texas, located at 2935 Almeta Lane, McKinney, Texas 75069.

4. Defendant, The Idaho Painter, Inc., a foreign corporation organized and existing under the laws of the State of Idaho. Defendant may be served with process at Defendant's home office address, located at 10235 W. Cayuse Lane, Boise, Idaho 83714.

### III.   JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this dispute due to the nature of Plaintiff's complaints against Defendant and because Plaintiff seeks damages in excess of the minimal jurisdictional requirements of this Court. Plaintiff seeks monetary damages in excess of $25,000, exclusive of attorneys' fees and costs.

6. This Court has personal jurisdiction over Defendant because the parties have contractually agreed to appear in the State of Texas for adjudication of any disputes arising from the contractual relationship complained of herein.

7. Venue for this case is permissive in Collin County, Texas as the parties have contractually agreed to appear before any State Court of Texas for adjudication of any disputes arising from the contractual relationships complained of herein.

### IV.   BACKGROUND FACTS

8. CIC is a custom industrial, wood, metal, and specialty coatings manufacturer based in North Texas. CIC specializes in water-based and solvent-based coatings for its client's needs.

9. One such product produced by CIC is their Centurion Wood Coatings ("Centurion") product that are water- and solvent-based, environmentally friendly, and American made coatings often used for furniture refinishing.

10. In order to expand their clientele and engage customers from all over the country, CIC engaged the services of TIP, a painter and social media influencer with a large following across numerous platforms to highlight CIC's products, particularly under the Centurion label.

11. TIP is found on Facebook, Instagram, YouTube, LinkedIn, Pinterest, and TikTok and has over 955,000 followers combined from all the above platforms.

**The Agreement Between TIP and CIC**

12. On September 7, 2021, TIP and CIC entered into a written agreement (the "Agreement") together for TIP to provide and personally participate in a package of "sponsorship, promotional activities and events" for CIC's products in the category of cabinet paints and coatings under the Centurion label.[1]

13. In exchange for TIP providing sponsorship and promotional services, CIC agreed to provide TIP with sufficient supplies of the Centurion Products and other materials needed to fulfill and create the promotional content. *See* Ex. A, at ¶ 2.

14. The Agreement was intended to run from September 1, 2021 through August 31, 2022, with an option to renew or extend upon mutual agreement of the parties.

15. Compensation was to be $100,000 paid out over four quarterly payments of $25,000, with the first payment given at the start of the contract.

16. The Agreement call for termination of the contract for the following reasons:

> "3. In addition to its other rights to terminate this Agreement, CIC and TIP may terminate this Agreement immediately on written notice in the following circumstances:
>
> > a. The parties or any of its officers, directors, or managerial employees commits any act or conduct that brings TIP/CIC into material public disrepute, contempt, scandal or ridicule, or which insults or offends the community, or which otherwise may reasonably cause or lead to injury to CIC/TIP Brands."
>
> *Id.* at ¶ 3.a.

---

[1] A true and correct copy of the Agreement is attached hereto as Exhibit A.

17. If the Agreement was terminated, TIP was required to refund CIC a pro rata share of the Fee based on the number of days of the Term that this Agreement has been in effect prior to the termination. *See* Exhibit A ¶ 4.

18. Additionally the Agreement outlined what conduct and standards TIP should meet as seen in the below language.

> "**CIC Brands Product Advocate.** TIP agrees to use its best good faith efforts which, at no time shall such effort deviate from what would be considered reasonable effort per industry standards, during the Term to mention CIC and the Products in available contexts (e.g., press interviews and trade shows) deemed appropriate by CIC and TIP, including without limitation events arranged by CIC and appropriate events independently arranged by TIP on their own behalf. Time permitting, TIP will request information from a designated CIC representative in advance regarding product information so that TIP can effectively discuss such matters when mentioning CIC as set forth above. CIC shall provide TIP with the name and contact information for such designated CIC representative on or before the Effective hereof but may provide TIP substitute contact information from time to time. CIC will supply product to TIP during the Agreement Term."

*Id*.

**TIP's Social Media Posts**

19. TIP creates content that varies in length and topic depending on the platform, often sharing the same created content across multiple social media sites. Prior to signing The Agreement, TIP had used and posted about CIC's Centurion products on his various platforms.

20. The first post regarding CIC after the Agreement became effective was on September 3, 2021 when TIP was invited to Texas to tour CIC's facility. Content created on this tour was posted on both Instagram and Facebook.

21. TIP posted content directly referencing CIC or containing Centurion products five times on Facebook, six times on Instagram, and two YouTube videos in the month of September.

22. The majority of the September posts contained clear and direct references to CIC, whether through included the Centurion name in the captions or in the case of Instagram, tagging the Centurion account in the post where it was prominently shown.

23. While the majority of the September posts clearly broadcast CIC and its Centurion products, not all were as clear. One Instagram post from September 23, 2021 showed a short video (a "reel") of a cabinet being sprayed without any mention through tagging or hashtags as to the products being used. Despite being asked more than once in the products to identify what product is being used, TIP never answers, and it instead fell upon the official Centurion Wood Products account to answer.

24. This lack of clarity was found in Facebook posts and YouTube videos posted in September, where Centurion products are used for content, but not acknowledged unless directly questioned by viewers, if at all.

25. In the month of October, there were 11 Instagram posts or reels, 6 Facebook posts, 6 YouTube videos, and 1 blog post on TIP's website related to CIC and Centurion.

26. Despite the increase in the volume of posts across multiple platforms, the vast majority fail to mention Centurion or tag them in any way that would alert potential customers of where to find the product.

27. If the October posts did mention CIC or Centurion in some way, it was usually to state the product being used such as the reel from October 16, 2021 captioned "[t]he added touch to a cabinet repaint job with Centurion Finishes 2800 series 2K Poly." This would be without tagging or linking to TIP's official online store where the products could be purchased.

28. The amount of CIC and Centurion related posts dropped in November of 2021 to 6 Instagram posts or reels, 3 Facebook posts, and 4 YouTube videos.

Copy from re:SearchTX

29. The accuracy and consistency of CIC or Centurion mentions varied wildly throughout the month, with posts that only mention "Centurion" in the caption being the primary signifier that TIP was involved with CIC and the Centurion products.

30. This is even further intensified on platforms like YouTube or Facebook where CIC and Centurion are less active and therefore, totally reliant on TIP sharing information through captions, tagging, or by answering questions asked by followers.

31. The amount of posts by the TIP decreased again in December of 2021. He only posted once on Instagram, three times on Facebook, and twice on YouTube.

32. The single Instagram post did not mention CIC or Centurion products in the caption or tag them in anyway. In fact, the only way to know this post involved CIC and Centurion is to swipe through multiple photos to find a picture of the Centurion can.

33. This trend continues on YouTube where the two videos posted do not clearly mention the usage of Centurion's products.

34. The Facebook posts from December include a repost of Instagram content, a repost of a previously shared blog on the Centurion products, and one new post about Centurion.

35. Over time, TIP's post and content about CIC and its Centurion Products became less and less obvious and often left followers to search the comments to see what the products being used were called.

36. Often, a Centurion account can be seen responding to follower questions asking which products were being used and answering questions about them. While some of the more technical product aspects were likely better known by CIC employees, it is not unusual to expect TIP would familiarize himself with the products he was featuring and answer any questions.

37. There is also substantial evidence present on TIP's social media that he is well versed on promoting and showcasing different products he uses. For example, TIP frequently posts his usage of Frog Tape, a brand of painter's tape.

38. When posting about Frog Tape, TIP always includes their Instagram handle or tags them directly in photos, allowing for a follower or viewer to quickly be taken to the official page. He has also done this with other products he has been using or with links to his official merchandise. However, TIP failed to do these for Centurion.

39. Additionally, TIP frequently included direct links to his online product store when using his branded tools, sprayer and various tips, and TIP merchandise like hats and shirts. However, a direct store link was never provided in any post concerning Centurion, despite it being available on TIP's store.

**CIC's Termination of the Agreement Due to TIP's Breach**

40. All of this culminated in CIC verbally telling TIP they would be terminating the Agreement on January 13, 2022 due to TIP's failure to deliver the expected services and breach of the Agreement. A written notice of the termination is attached to this petition as Exhibit B.

41. In addition to TIP's failure to promote the products, which according to the contract at "no time shall such effort deviate from what would be considered reasonable effort per industry standards," he breached Paragraph 3.a. of the Agreement.

42. This paragraph allowed for either party to terminate the Agreement if the "parties or any of their officers, directors, or managerial employees commits any act or conduct that brings TIP/CIC into material public disrepute, contempt, scandal or ridicule, or which insults or offends the community, or which otherwise may reasonably cause or lead to injury to CIC/TIP brands."

Copy from re:SearchTX

43. In addition to the numerous posts that did not adequately showcase the CIC and Centurion Products, TIP breached the Agreement by posting numerous shirtless photos or reels to his social media.

44. TIP also created backlash against the CIC and Centurion brand by using improper techniques to spray cabinets, falsely stating pot life, and by mentioning other products as great alternatives to CIC's products.

45. TIP damaged the CIC and Centurion brand by sharing personal posts that could reasonably cause or lead to injury to CIC's brands. This includes shirtless workout videos and a video of a dachshund being thrown on a bed that generated many negative comments from his followers.

46. Perhaps the most damaging post to the CIC and Centurion brand came via an Instagram story showing TIP wearing a man diaper and sucking on a pacifier to announce he was going to be a grandfather. While the sentiment is nice, this was not professional and damaged the CIC and Centurion brand by association.

## V.   CAUSE OF ACTION

### A.   Breach of Contract

47. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48. The Agreement is a valid and enforceable contract between CIC and TIP.

49. CIC performed its obligations under the Agreement by compensating TIP in accordance with the terms of the Agreement and providing to TIP all products and information he needed to create promotional content.

Copy from re:SearchTX

50. TIP breached his obligations under the Agreement, including those contained in Section 3.a. and under the "CIC Brands Product Advocate" heading as described in further detail above.

51. TIP breach of contract has directly and proximately caused CIC damages and will continue to cause CIC damages in the future.

## VI.   DAMAGES

52. In particular, TIP has caused damage to CIC by incorrectly using their Centurion products, failure to fulfill his promotional obligations, and by posting personal content that is insulting and damaging to CIC and Centurion's reputation.

53. CIC is entitled to direct and consequential damages, including, but not limited to, a full pro rata refund of the contract price, in addition to other incidental damages.

## VII.   CONDITIONS PRECEDENT

54. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

55. All required conditions precedent have been met.

## VIII.   ATTORNEYS' FEES AND COSTS

56. This action is based in part on TIP's breach of the Agreement. CIC has been forced to retain the undersigned counsel to protect their legal rights and prosecute this action on their behalf. Pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, CIC is entitled in this action to be awarded its reasonable and necessary attorneys' fees and costs incurred and that may be incurred at all court levels, including the intermediate appellate court and Texas Supreme Court.

## IX. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff CIC Coatings, LLC requests and prays that:

1) The Court enter an injunction to (i) restrain and enjoin Defendant from using any content containing CIC's products that was pre-recorded, (ii) restrain and enjoin Defendant from reposting prior CIC content; (iii) restrain and enjoin Defendant from any future posts using CIC products or content; and (iv) Defendant be required to return all property given to Defendant for his usage in promotional materials;

2) The Court enter judgment for Plaintiff against Defendant for actual damages, including the refund, return, or restitution of the $25,000 contract price amount already paid to Defendant for his services and a refund or offset of the remaining pro rata contract price balance;

3) Plaintiffs have judgment against Defendant for reasonable and necessary attorneys' fees and associated costs, costs of court, and pre-judgment and post-judgment interest as allowed by law; and

4) Plaintiff recovers such additional relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

**ZIEGLER GARDNER BELL, PLLC**

*/s/ Kayla M. Sherrill*
**Gregory N. Ziegler**
State Bar No. 00791985
ziegler@zgblaw.com
**Alexander S. Gebert**
State Bar No. 24120543
agebert@zgblaw.com
**Kayla M. Sherrill**
State Bar No. 24117048
ksherrill@zgblaw.com

Bank of America Plaza
901 Main Street, Suite 4960
Dallas, Texas 75202
(214) 241-4808 (Office)
(469) 901-5941 (Fax)

**ATTORNEYS FOR PLAINTIFF
CIC COATINGS, LLC**

## CERTIFICATE OF SERVICE

I certify that this pleading is being served on all counsel of record in accordance with Rule 21a of the Texas Rules of Civil Procedure on this 14th day of February 2022.

*/s/ Kayla M. Sherrill*

Kayla M. Sherrill

Copy from re:SearchTX